IN THE UNITED STATES DISTRICT COsab;eURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| DESIGN GAPS, INC., <br> DAVID GLOVER, Individually and Officer of <br> Design Gaps, Inc., and <br> EVA GLOVER, Officer of Design Gaps, Inc. | ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. _____ |
|     Plaintiffs, | ) <br> ) | |
|     vs. | ) <br> ) | **COMPLAINT** |
| JOCELYN HALL, Individually and Owner <br> Hall Interiors, LLC, <br> HALL INTERIORS, LLC <br> PETERS CUSTOM HOMES, INC., <br> NICHOLAS PETERS, Individually and <br> Owner Peters Custom Homes, Inc., <br> PETERS CUSTOM DESIGN, LLC d/b/a <br> EMERALD & OAK DESIGN STUDIO, and <br> MIRIAM PETERS, Individually and Owner/ <br> Manager Peters Custom Design, LLC, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
|     Defendants. | ) <br> ) <br> ) | JURY TRIAL DEMANDED |

    Plaintiffs Design Gaps, Inc., David Glover and Eva Glover (individually referred to herein as "Design Gaps," "Plaintiff David Glover" and "Plaintiff Eva Glover," respectively, and collectively referred to herein as "Plaintiffs") seeks damages, profits, treble damages, attorneys' fees, costs, and a permanent injunction against Defendant Jocelyn Hall ("Defendant Hall"), Defendant Hall Interiors, LLC ("Hall Interiors"), Defendant Peters Custom Homes, Inc. ("Peters Custom Homes"), Defendant Nicholas Peters in his individual capacity and capacity as President of Peters Custom Homes ("Defendant Nicholas Peters"), and Defendant Peters Custom Design, LLC d/b/a Emerald & Oak Design Studio ("Peters Custom Design"), Defendant Miriam Peters in her individual capacity and capacity as Owner/Manager of Peters Custom Design ("Defendant

Miriam Peters"), where all Defendants may collectively be referred to herein as "Defendants," in association with Lanham Act false advertising and false designations of origin violations, breach of contract, misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act, tortious interference with a contract, unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1 *et seq*., breach of fiduciary duty, and conversion.

## THE PARTIES

1.      Plaintiff Design Gaps, Inc. is a North Carolina corporation with a principal place of business located at 4810 Ashley Park Lane, Suite G, Charlotte, North Carolina 28210.

2.      Plaintiff David Glover in his capacity as individual and an Officer of Design Gaps, Inc. has a place of business located at 4810 Ashley Park Lane, Suite G, Charlotte, North Carolina 28210.

3.      Plaintiff Eva Glover in her capacity as an Officer of Design Gaps, Inc. has a place of business located at 4810 Ashley Park Lane, Suite G, Charlotte, North Carolina 28210.

4.      Defendant Jocelyn Hall in her individual capacity and capacity as registered agent and, upon information and belief, owner of Hall Interiors LLC a North Carolina limited liability company having an address located at 327 Cemetery Street, Charlotte, North Carolina 28216.

5.      Defendant Hall Interiors LLC a North Carolina limited liability company having a place of business located at 327 Cemetery Street, Charlotte, North Carolina 28216.

6.      Defendant Peters Custom Homes, Inc. a North Carolina corporation having a principal office located at 5950 Fairview Road, Suite 712, Charlotte, North Carolina 28210.

7.      Defendant Nicholas Peters, in his individual capacity and capacity as President of Peters Custom Homes, Inc., has a place of business located at 5950 Fairview Road, Suite 712, Charlotte, North Carolina 28210.

2

8. Defendant Peters Custom Design, LLC, upon information and belief, d/b/a Emerald & Oak Design Studio, a North Carolina limited liability company having a principal office located at 4310 Sharon Road, U01, Charlotte, North Carolina 28211.

9. Defendant Miriam Peters, in her individual capacity and capacity as Owner/Manager of Peters Custom Design, LLC, has a place of business located at 433 Highland Forest Drive, Charlotte, North Carolina 28270.

## NATURE OF ACTION

10. This action arises under 17 U.S.C. § 1125 and certain statutory and common law of the State of North Carolina including misappropriation of trade secrets, breach of contract, tortious interference with a contract, breach of fiduciary duty, and conversion.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1051 *et seq.*, the Lanham Act; 28 U.S.C. § 1338(a); and 28 U.S.C. § 1331, federal question.

12. Supplemental jurisdiction of this Court is invoked over the claims that arise under the statutory and common law of the State of North Carolina pursuant to 28 U.S.C. § 1367(a) since such claims are closely related to the federal claims and form a part of the same case or controversy.

13. Hall Interiors in connection with Defendant Hall, and Peters Custom Homes and Peters Custom Design in connection with Defendant Nicholas Peters and Defendant Miriam Peters transact business in North Carolina, advertise their goods and services in North Carolina, and sell and distribute their goods and services through in person contacts in North Carolina, online websites and other agents with the reasonable expectation that such goods and services are to be used or consumed in North Carolina. For at least these reasons, the Court has personal jurisdiction over the Defendants.

3

14.     Venue is proper in this District for at least the reasons that Defendants, either individually and/or cooperatively, conduct business in this District, Defendants purposefully avail themselves to this District through the sale of goods and services offered in association with or for homes to residents of this District or residents of this District purchase goods and services from these Defendants in this District. Hence, such sales of goods and services offered with or purchased for homes in North Carolina subjects Defendants to personal jurisdiction in this District.

## FACTUAL BACKGROUND

15.     Design Gaps is engaged locally and throughout the Carolinas as a full-service interior space design firm that specializes in high-end residential custom construction and renovations including fine custom cabinetry that is included throughout the home. Design Gaps possesses a collection of copyrights in certain works, trade secrets, and other proprietary information that are not lawfully available to the public that are used in the design and construction of such residential projects ("Plaintiffs' Proprietary Information").

16.     Such trade secrets include business and technical information, including but not limited to formulas, patterns, programs, devices, compilations of information, methods, techniques, and processes from which Plaintiffs derive actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can otherwise obtain economic value from its disclosure or use. Plaintiffs undertake efforts that they deem reasonable under the circumstances to maintain the secrecy of these trade secrets.

A.     **Employment and Noncompete Agreement with Defendant Hall**

17.     In an effort to protect its collection of works subject to copyright protection, trade secrets, and other proprietary information that are not lawfully available to the public, Design Gaps

4

chose to enter into an employment contract otherwise termed a Business Development Agreement ("Agreement") with Defendant Hall dated June 19, 2018. The Agreement, included as Exhibit A, was in writing and the non-solicitation provisions of paragraph 4.1 and the noncompete provisions of paragraph 4.2 were made part of the employment contract in her position as Business Development Manager as identified in paragraph 1.4 of the Agreement.

18.     Pursuant to paragraph 2.1 of the Agreement, Defendant Hall received a base salary of $3,000 per month. Further pursuant to paragraph 2.2, Defendant Hall was provided a commission based upon the amount of sales she secured in a given year. The commission rate ranged from 3% up to 11.5% based upon the total annual sales. Additionally, this same paragraph provides that Defendant Hall was to receive a commission of 10% for any residential consulting agreements she was able to secure.

19.     The non-solicitation provisions of paragraph 4.1 provides that over the course of the Agreement Period and for two years following termination of the Agreement, Defendant Hall was not to "directly or indirectly, through any other person, firm or corporation, solicit, raid, entice, induce or encourage any Business Dev., sales representative agent or consultant of or for [Design Gaps] or its affiliates to (i) cease … her association with or leave the employ of [Design Gaps] or its affiliates, (ii) solicit customers or suppliers of [Design Gaps] or its affiliates for [Defendant Hall's] or any other person's or entity's benefit or (iii) otherwise act in violation of that person's obligations to [Design Gaps] or its affiliates, and [Defendant Hall] shall not authorize or knowingly approve the taking of such actions by any other person."

20.     The noncompetition provisions of paragraph 4.2 provides that over the course of the Agreement Period and for two years following termination of the Agreement, Defendant Hall was not to "own, manage, operate, join, control, or participate in the ownership, management,

operation, or control of, or be connected in any manner with, any entity" that competes with Design Gaps in the design and selling of residential cabinetry. Furthermore, such limitations extended to the region where Design Gaps conducts the design and sell of such residential cabinetry, which are the states of North Carolina and South Carolina, those states where Plaintiff David Glover holds a commercial and residential general contractor's license and where Design Gaps has focused upon the development of Plaintiffs' Proprietary Information.

21.     The Agreement expressly provides the Scope of Work that was within Defendant Hall's duties. Paragraph 1.3 indicates, *inter alia*, that Defendant Hall was to meet with prospective clients to determine their needs and the opportunities that Design Gaps may use to fulfil those needs and measure, if necessary, and retrieve the necessary information from all relevant sources to execute and/or assist in the execution of designs, drawings, quotations, pricing, contracts, orders, and communications to the necessary parties for the purpose of closing and selling Design Gaps' products and services. As this indicates, Defendant Hall was to be intimately versed in Plaintiffs' Proprietary Information, and the failure to protect such information in its use would subject the information to others who can obtain economic value from its use. Clearly, the Agreement with Defendant Hall was designed to protect this legitimate business interest of Design Gaps.

22.     Defendant Hall tendered her notice of resignation to Design Gaps sometime in mid-May of 2021, upon information and belief, in coordination with the assumed name registration of Emerald & Oak Design Studio ("Emerald & Oak") on May 4, 2021. In her resignation, Defendant Hall indicated that she was "burned out" from doing the type of work she was engaged in at Design Gaps. Defendant Hall also indicated that she needed to assist her father who was ill in California. Her last day of employment was set for June 1, 2021.

23.     Over the course of the time period that she maintained possession of the Surface

6

Laptop that Design Gaps provided for her use, Plaintiffs became aware that Defendant Hall was working at Emerald & Oak Design Studio, an operating company of Peters Custom Design. Emerald & Oak had acquired the former Hans Krug kitchen and bath design studio that was located a few blocks away from Design Gaps' Charlotte location, both located near the SouthPark Mall in Charlotte, North Carolina. Hans Krug was also featuring high-end European style cabinetry and was the principal competitor for Design Gaps in the Charlotte market. Upon learning this information, Plaintiffs immediately terminated Defendant Hall's access to Dropbox, which contained Plaintiffs' Proprietary Information belonging to Design Gaps. Dropbox activity logs showed that Defendant Hall had maintained quite a bit of access to the information up until the time that her access was finally terminated by Plaintiffs.

24.    Plaintiff David Glover approached Defendant Hall at the Emerald & Oak showroom on June 16, 2021, requesting the return of all property belonging to Design Gaps that was in her possession. Defendant Hall returned the Surface Laptop that was provided by Design Gaps, where much of Plaintiffs' Proprietary Information had been downloaded by Defendant Hall, later that evening indicating that she continued to assist the clients she was working with while employed at Design Gaps.

B.    **Defendant Hall's Breach of the Agreement**

25.    Upon information and belief, Defendant Hall had no previous kitchen, bath, or cabinet design experience or knowledge prior to her execution of the Agreement with Design Gaps. While working at Design Gaps she was instructed in the various computer-aided design ("CAD") and other design software used in the cabinet industry as well as the technical know-how for space planning and design regarding cabinetry, integration of appliances, lighting, etc., which was requisite in determining the proper design and layout of cabinetry in a residential space.

7

26.     Plaintiff David Glover, the CAD Technician for Design Gaps, and Plaintiff Eva Glover invested heavily in providing training and mentorship to Defendant Hall. This was important since Design Gaps' clients tend to be of a very high-end nature seeking the best creative use of space to enhance their homes. Such customers also seek the flawless execution and planning of the products and services sold to them. The benefit of Design Gaps' training and educational investment in Defendant Hall became evident as Defendant Hall's sales increased substantially during her last year of employment prior to leaving Design Gaps for a position at Emerald & Oak Design Studio.

27.     Defendant Hall was also informed of and trained by Design Gaps in the use of Plaintiffs' Proprietary Information, which Design Gaps has developed over time relating to the cabinet industry with respect to the following: framing, plumbing, ventilation, electrical, lighting design and multiple aspects of residential construction with the purpose of creating an invaluable resource for a Design Gaps' client and further assist with Defendant Hall's knowledge of the unique techniques provided by Design Gaps that were needed to close a sale.

28.     Upon information and belief, as further discussed herein, Defendant Hall performed design and construction services for Peters Custom Homes or its predecessor in interest within two years of the termination of the Agreement. Upon information and belief, Defendant Hall continued to provide design and constructions services to Peters Custom Homes using Plaintiffs' Proprietary Information prior to what Plaintiffs believe to be her termination sometime around March 2023.

29.     Upon information and belief, as further discuss herein, Defendant Hall performed design and construction services for Peters Custom Design or its predecessor in interest within two years of the termination of the Agreement. Upon information and belief, Defendant Hall continued to provide design and constructions services to Peters Custom Design using Plaintiffs' Proprietary

8

Information prior to what Plaintiffs believe to be her termination sometime around March 2023.

30. Following her termination from Design Gaps, Plaintiffs further investigated Defendant Hall's activities and found quite a few number of incidents that were in breach of the Agreement. For example, over the course of June 22-25, 2018, just following the date that Defendant Hall entered the Agreement, she chose to meet with Naida who was not a Design Gaps' client, and invoiced them directly for the time she spent in consultations that she had with them.

31. In another example, on December 18, 2018, Defendant Hall directly invoiced a Design Gaps' client having the name of Hines for her consultation with them at the rate of $85.00 per hour notwithstanding that Design Gaps' quoted consultation rate was $150.00 per hour. Defendant Hall additional reflected on her paperwork to the Hines client that she was saving them the difference by offering the consultation outside of Design Gaps. On January 18, 2019, Defendant Hall directly sold to Hines lighting that she purchased showing she made a profit of $339.60 on the sale.

32. On January 19, 2019, Defendant Hall applied for a reseller's exemption certificate with the State of North Carolina indicating the name of her business purchasing the products was JH Interiors LLC, which was administratively dissolved by the North Carolina Secretary of State on February 4, 2020. Defendant Hall invoiced her consultation time that she directly billed to clients through JH Interiors LLC.

33. In yet another example, Defendant Hall met with a client associated with the Williams residence at their home. Defendant Hall and the client subsequently met at stone supplier's showroom used by Design Gaps where they selected slabs and were shown countertops. Defendant Hall sold countertops from Instyle to the client for the Williams residence, where she earned a commission, and invoiced the sale through JH Interiors LLC.

9

34.     In still another example, on February 24, 2020, Defendant Hall received a check in the amount of $5,612.44 from Seth Berger, a current Design Gaps client that was provided a whole house of cabinetry and appliances by Design Gaps, the check was made out to Design Gaps for the purchase of tile. Defendant Hall directly purchased the tile from Walker Zanger that she intended to directly sell to this customer. So, Defendant Hall destroyed the check made out to Design Gaps, saved an image of the torn-up check (a true and correct copy of the redacted check that was destroyed by Defendant Hall is included in Exhibit G), and then invoiced the client for the same amount through Hall Interiors, LLC (a true and correct copy of the invoice that Defendant Hall issued to Design Gaps' client is included in Exhibit H). Defendant Hall's breach of the Agreement became apparent when Design Gaps suddenly terminated Defendant Hall's Dropbox access before she had completely purged all of her information some of which she had stored in the Henderson job folder in Design Gaps' Dropbox file hosting service.

35.     Upon information and belief, over the duration of her employment with Design Gaps, Defendant Hall looked for and took advantage of any opportunity to provide consulting services and sell products to customers that solely benefited herself.

**C.     Peters Custom Design's Use of Plaintiffs' Proprietary Information**

36.     On February 1, 2022, Plaintiffs reached out to Defendant Hall to offer the opportunity to meet and confer concerning her commitments pursuant to the Agreement prior to filing a lawsuit for breach of the noncompete provisions of the Agreement.

37.     On February 2, 2022, Plaintiffs learned that two of Design Gaps' primary installers were leaving in the middle of a large cabinet installation after communicating with Defendant Hall. Following this, Design Gaps learned during her employment with Emerald & Oak, Defendant Hall sold a project to a Design Gaps' client and used the same two installer's she influenced to leave

10

Design Gaps to install cabinets she sold to an existing and current Design Gaps' client.

38.     On July 8, 2021, Plaintiff David Glover sent an email to Defendant Miriam Peters, the spouse of Defendant Nicholas Peters, upon information and belief, both who each have an ownership interest in Emerald & Oak, notifying her that Defendant Hall had a noncompete and a non-solicitation agreement with Design Gaps that was to endure for two years following leaving her employment with Design Gaps.

39.     In a telephone conversation Plaintiff David Glover had with Defendant Miriam Peters, Defendant Miriam Peters indicated that she was aware that Defendant Hall had entered into a noncompete and a non-solicitation agreement, but further indicated that Defendant Hall engaged an attorney to review the Agreement and who indicated that the Agreement would likely not hold up in court. At one point during the two-year period following her termination from Design Gaps, Emerald & Oak featured Defendant Hall on Emerald & Oak's website as a designer with the company.

40.     Prior to employing Defendant Hall, Design Gaps had established a working relationship with Peters Custom Homes whose President is Defendant Nicholas Peters for the design and installation of cabinetry at the Jeffus Residence in 2018. Upon her employment with Design Gaps, Defendant Hall assisted with the Jeffus Residence project. In 2020 and 2021, Design Gaps was engaged in several cabinet projects for the Henderson Residence and the Lamb Residence, respectively, for Peters Custom Homes while Defendant Hall was employed with Design Gaps. Thus, Defendant Nicholas Peters became aware of Defendant Hall's capabilities in the selling, design, and installation of residential cabinetry while Defendant Hall was employed by Design Gaps.

11

**D.**  **Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's False Advertising of Design Gaps' Designs and the True Origin and Source of Plaintiff Glover's Designs and Design Services**

41.     Upon information and belief, Plaintiffs' Proprietary Information has been and is being used for selling, design, and construction purposes at Peters Custom Homes and Peters Custom Design. Additionally, marketing and advertising of such designs have been used and currently can be found on the Peters Custom Homes and Peters Custom Design websites, and, upon information and belief, used in the eventual sale and construction of homes and/or the renovation of homes to prospective homeowners and buyers of such services.

42.     Defendant Nicholas Peters and Defendant Miriam Peters, at least through their businesses Peters Custom Homes and Peters Custom Design, have repeatedly and willfully misrepresented and continue to misrepresent the true origin and source of cabinet and closet designs created and revised by Plaintiff Glover, and falsely claiming to be the designers of these associated designs that were, in fact, created by Plaintiff Glover. Such designs include the construction specifications, appliances, lighting, plumbing, electrical, installation, and all components associated with the design and placement of cabinetry and closets in the home, and, in particular, the arrangement of such components to lead to the finished cabinetry and closet systems in the home. Such components are fully represented in the technical drawings provided by Plaintiffs in association with, for example, projects performed for Peters Custom Homes.

43.     Because a designers' success in winning clients, depends on what they can show has been accomplished, Plaintiff Glover has a strong interest in defending his reputation for creativity and preventing a false claim that Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have done the work that Plaintiff Glover, in fact, has done.

12

44.     The Peters Custom Homes and Peters Custom Design websites characterize the work performed at a residence in an area they call "Quail Hollow North" in Charlotte, North Carolina as Defendant Nicholas Peters' and/or Defendant Miriam Peters' own work. The contract associated with the work performed by Plaintiffs at the residence located in Quail Hollow North has been included in Exhibit B and the design plans have also been included therewith. The plans for the kitchen, the bathrooms, the rear entry as well as other design work performed by Design Gaps can be found in the technical drawings included in Exhibit B.

45.     Upon information and belief, Defendant Nicholas Peters and Defendant Miriam Peters have caused to be posted on the Peters Custom Homes and Peters Custom Design websites a webpage reached by selecting "Portfolio." The webpage entitled "Our Portfolio" is then displayed and the webpage included in Exhibit C is displayed when the link to "Quail Hollow North" is selected from the Our Portfolio webpage.[1]

46.     Upon information and belief and as further demonstrated in Exhibit C introduced above, Defendant Nicholas Peters and Defendant Miriam Peters at least, in part, through their businesses Peters Custom Homes and Peters Custom Design have promoted the kitchen and other areas of the Quail Hollow North residence designed by Plaintiffs as their own designs.

47.     The Peters Custom Homes and Peters Custom Design websites have characterized the work performed at a residence in an area they call "Lake Wylie" in Charlotte, North Carolina as Defendant Nicholas Peters' and/or Defendant Miriam Peters' own work. The contract associated with the work performed by Plaintiffs at the residence located in Lake Wylie has been included in Exhibit D. The contract indicates that Design Gaps designed and constructed the kitchen area, the scullery, the 1st and 2nd floor laundries, and various bathrooms throughout the residence.

---

[1] https://peterscustomhomes.com/portfolio-item/quail-hollow-north/ accessed March 22, 2023.

48.     Upon information and belief, Defendant Nicholas Peters and Defendant Miriam Peters have caused to be posted on the Peters Custom Homes and Peters Custom Design websites a webpage reached by selecting "Portfolio." The webpage entitled "Our Portfolio" is then displayed and the webpage included in Exhibit E is displayed when the link to "Lake Wylie" is selected from the Our Portfolio webpage.[2]

49.     Upon information and belief and as further demonstrated in Exhibit E introduced above, Defendant Nicholas Peters and Defendant Miriam Peters at least, in part, through their businesses Peters Custom Homes and Peters Custom Design have promoted the kitchen and other areas of the Lake Wylie residence designed by Plaintiffs as their own designs.

50.     Exhibit F provides some Instagram posts that Peters Custom Homes made concerning the Lake Wylie kitchen, master bathroom, and scullery designs created by Design Gaps.[3] As shown in these posts, there is no attribution to Design Gaps or their work on these designs for the Lake Wylie kitchen, master bathroom, and scullery designs.

51.     As demonstrated above, in connection with the goods that Plaintiffs have developed, and the services Plaintiffs have provided (collectively referred to herein as "Plaintiffs' Designs"), Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have used in commerce words, terms, names, and designs, individually and in combination, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design with Plaintiffs' Designs and design oservices.

---

[2] https://peterscustomhomes.com/portfolio-item/lake-wylie/ accessed March 22, 2023.
[3] https://www.instagram.com/p/CoXFdYVpzwX/?hl=en, https://www.instagram.com/p/CpkV5k-uf8P/?hl=en, https://www.instagram.com/p/Co7K4VkuBWQ/?hl=en accessed March 22, 2023.

14

52.     As further demonstrated above, in other instances, with respect to the goods that Plaintiffs have developed, and the services Plaintiffs have provided, otherwise referred to herein as "Plaintiffs' Designs", Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have chosen not to use in commerce the words, terms, names, and designs, individually and in combination, that if otherwise used would avoid confusion, or mistake, or deception as to the affiliation, connection, or association of Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design with Plaintiffs' Designs and design services.

53.     As demonstrated in the examples provide above, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have used in commerce the necessary words, terms, names, and designs, individually and in combination, to deceive the public with respect to the origin, sponsorship, or approval of the goods, services, or commercial activities developed and owned by Plaintiff Glover.

54.     As further demonstrated in the examples provide above, in other instances, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have chosen not to use in commerce the necessary words, terms, names, and designs, individually and in combination, that if otherwise used would avoid confusion, or mistake, or deception as to the affiliation, connection, or association of Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design with Plaintiff Glovers' designs and design services.

55.     These misrepresentations by Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design surrounding not only Plaintiffs' Designs but other revision and design services to conform the plan, either through derivative changes of the

protected elements or selection of the non-protected elements to function with the protected elements, to meet the needs of a specific client, and other design activities that Plaintiff Glover routinely provides cannot be provided to the segment of the public that Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have deceived.

56. Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design have sought to benefit themselves and their home building and home renovation businesses to capitalize on the goodwill associated with Plaintiff Glover, to mislead past, current, and potentially new customers with respect to the origin of such designs, and to divert current and potential customers from doing business with Plaintiffs in favor of doing business with Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design. Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's conduct is a violation of the laws of the United States and of the State of North Carolina.

**<u>FIRST CAUSE OF ACTION</u>**
**(Breach of Business Development Agreement)**
**Design Gaps, Inc. v. Jocelyn Hall**

57. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

58. The provisions of the Business Development Agreement ("Agreement") included terms of her employment with Design Gaps as well as the non-solicitation and the noncompete provisions. The Agreement is in writing.

59. The Agreement identified a monthly salary payable on a biweekly basis, a commission on an escalating scale based upon the annual cabinet sales she provided, and a 10% commission based on residential consulting agreements that she secured. The payment terms of

16

the Agreement are based upon a valuable consideration.

60.     The noncompete provisions were effective over the course of the Agreement Period and for two years following termination of the Agreement within the States of North Carolina and South Carolina where Design Gaps has offices and does business. Thus, the noncompete provisions can be deemed as reasonable with respect to time and territory based upon the length of time involved and limited only to the regions where Design Gaps does business.

61.     Based upon her assigned duties, Defendant Hall was to be intimately versed in Plaintiffs' Proprietary Information, and the failure to protect such information in its use would subject the information to others who can obtain economic value from its use. Clearly, the Agreement with Defendant Hall was designed to protect these legitimate business interests of Design Gaps.

62.     The actions of Defendant Hall, as described herein, including the direct consultation and direct sale of goods to customers to her benefit while she was employed for Design Gaps is a breach of her obligations under the Agreement.

63.     The actions of Defendant Hall, as further described herein, including her rendering services to Peters Custom Homes and Peters Custom Design, the latter of which did business under the name of Emerald & Oak Design Studio, violates Defendant Hall's noncompetition provisions pursuant to the Agreement.

64.     As a consequence of Defendant Hall's wrongful actions, Design Gaps has suffered and will continue to suffer irreparable harm and loss and has suffered and will continue to suffer financial and economic loss.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets)
### Plaintiffs v. Defendants

65.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

66.     Design Gaps' product sources, products, price lists, advertising plans, designs and materials, technical drawings, services, pricing points, methods of sales and business contracts and training methods as well as its customers' pricing programs, unit sales, dollar volume, models, financial information, product roadmaps, channelization and sales strategies are trade secrets subject to the North Carolina Trade Secrets Protection Act.[4]

67.     This information derives independent economic value by not being readily accessible through independent means to competitors such as Peters Custom Homes and Peters Custom Design and its operating design business Emerald & Oak Design Studio, which can and does profit from its use and disclosure.

68.     Design Gaps has taken measures to maintain the secrecy of this information.

69.     Defendant Hall's conduct and Defendant Nicholas Peters' and Defendant Miriam Peters' coercion of Defendant Hall constitute an actual and threatened misappropriation and misuse of Design Gaps' confidential trade secrets.

70.     Defendant Hall, Defendant Nicholas Peters, at least through Peters Custom Homse, Defendant Miriam Peters, at least through Peters Custom Design and/or Emerald & Oak Design Studio, acquired, disclosed, or used the trade secrets of Plaintiffs without express or implied authority or consent of Plaintiffs. Defendant Hall, Defendant Nicholas Peters, at least through Peters Custom Homse, Defendant Miriam Peters, at least through Peters Custom Design and/or

---

[4] N.C. Gen. Stat. §§66-152 *et seq*.

18

Emerald & Oak Design Studio, did not arrive at such trade secrets by independent development, reverse engineering, and was not obtained from another person with a right to disclose the trade secrets.

71.     Defendant Hall, Defendant Nicholas Peters, and Defendant Miriam Peters have acted willfully and with malice toward Design Gaps' legitimate interests in protecting its trade secrets and confidential and proprietary information.

72.     As a consequence of these actions by Defendant Hall who was not given the authority to disclose Plaintiffs' trade secrets and the coercion imposed upon Defendant Hall by Defendant Nicholas Peters, at least through Peters Custom Homes, and Defendant Miriam Peters, at least through Peters Custom Design and/or Emerald & Oak Design Studio, to acquire Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and has suffered and will continue to suffer financial and economic loss.

### THIRD CAUSE OF ACTION
### (Lanham Act False Advertising Violations)
### Plaintiffs v. Nicholas Peters, Peters Custom Homes, Inc., Miriam Peters, and Peters Custom Design, LLC

73.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

74.     Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's actions or failures to act disclosed herein constitute a violation of the Lanham Act including, but not limited to, claims for false advertising.[5]

75.     Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design used, reproduced, displayed, marketed, offered for sale, advertised

_____

[5] 15 U.S.C. § 1125.

and sold Plaintiffs' Designs by showing Peters Custom Homes' and Peters Custom Design's ability to provide the kitchen and other areas of the Quail Hollow North residence that were designed by Plaintiffs[6] and the kitchen, master bathroom, and scullery designs of the Lake Wylie residence that were designed by Plaintiffs.[7]

76.     Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design have used the Plaintiffs' designs for the kitchen and other areas of the Quail Hollow North residence design by Plaintiffs, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Quail Hollow North residence's kitchen and other areas, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Quail Hollow North residence's kitchen and other areas, or made false or misleading descriptions or representations of fact about the Quail Hollow North residence's kitchen and other areas, which are likely to cause confusion or mistake or to deceive others with respect to Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's use of the design for the Quail Hollow North residence's kitchen and other areas design by Design Gaps.

77.     Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design have used Plaintiffs' designs for the kitchen, master bathroom, and scullery designs of the Lake Wylie residence, which have directly been copied from and/or bear substantial similarity to Plaintiffs' designs for the Lake Wylie residence's kitchen, master

_____

[6] See Exhibits B & C.
[7] See Exhibits D, E & F.

20

bathroom, and scullery designs, in commerce for commercial advertising or promotion, and have falsely designated the origin of the Lake Wylie residence's kitchen, master bathroom, and scullery designs, or made false or misleading descriptions or representations of fact about the Lake Wylie residence's kitchen, master bathroom, and scullery designs, which are likely to cause confusion or mistake or to deceive others with respect to Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's affiliation with Plaintiffs, or with respect to the origin, sponsorship, or approval of Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's use of the designs for the Lake Wiley residence's kitchen, master bathroom, and scullery.

78.     In connection with the goods that Plaintiffs have developed, and the services Plaintiffs have provided, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design have used in commerce words, terms, names, and designs, individually and in combination, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design with Plaintiffs' design and installation services.

79.     Upon information and belief, Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's false and misleading information actually deceived or tended to deceive a substantial portion of the intended audience into believing, among other things, that Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design designed certain cabinetry and other plans that Plaintiffs otherwise designed.

80. Upon information and belief, Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's false and misleading information are material in that consumers and potential consumers for home construction or renovation goods and services are misled into choosing Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design to provide such goods and services when such designs were otherwise provided by Plaintiffs.

81. Upon information and belief, Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's false and misleading advertising have injured Design Gaps' business, Plaintiffs' business reputations and goodwill, and Plaintiff David Glover's reputation for creativity in design, in an amount to be determined at trial.

82. Upon information and belief, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design have deprived profit from Plaintiffs otherwise benefiting themselves and have been unjustly enriched as a direct and proximate result of their actions against Plaintiffs.

83. Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's actions in violation of the Lanham Act have caused, and will continue to cause, irreparable damage to Plaintiffs for which there exists no adequate remedy at law.

84. During the pendency of this action and permanently thereafter, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design should be enjoined and restrained from directly or indirectly using any of Plaintiffs' Design in any manner that is prohibited by the copyright law of the United States or the Lanham Act.

85.     Plaintiffs are entitled to all legal and equitable relief provided by the applicable law, including, but not limited to, 15 U.S.C. § 1117. That relief includes but is not limited to injunctive relief, monetary damages in an amount up to three times the actual damages sustained by Plaintiffs as a result of Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's actions and as determined by this Court as guided by the principles of equity, all profits obtained by Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design as a result of their actions, the costs of this action, and reasonable attorney's fees incurred by Plaintiffs in this case.

### FOURTH CAUSE OF ACTION
**(Lanham Act False Designation of Origin Violations)**
**Plaintiff David Glover in his individual capacity and capacity as Officer of Design Gaps v. Nicholas Peters, Peters Custom Homes, Inc., Miriam Peters, and Peters Custom Design, LLC**

86.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

87.     Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and/or Peters Custom Design's actions as alleged herein are unlawful and in violation of Section 43(a) of the Lanham Act.[8]

88.     Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design have repeatedly and falsely claimed in commercial advertising or promotional materials to be the designer of numerous works that were, in fact, designed by Plaintiff David Glover, at least including the Quail Hollow North residence's kitchen and other areas and the Lake Wylie residence's kitchen, master bathroom, and scullery.

---

[8] 15 U.S.C. § 1125(a).

Case 3:23-cv-00186   Document 1   Filed 03/29/23   Page 23 of 30

89.    In some cases, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design deceptively adopted different names for the designs, but the designs, nonetheless, were the same as or substantially similar Plaintiff David Glover's designs.

90.    Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's false designation of origin is likely to deceive and cause confusion in the marketplace, including confusion among consumers.

91.    As a direct and proximate portrayal of themselves as the designers of certain home plans designed by Plaintiff David Glover, Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's deceitful actions are continuing and will continue to serve as a threat to Plaintiff David Glover as a designer of cabinetry for homes as well as to the public. Unless Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design are restrained and enjoined from engaging in the false designations of origins described above, Plaintiff David Glover will likely lose future projects and profits in an amount not yet determined and will continue to suffer irreparable injury to his business reputation and goodwill as a designer. Plaintiff David Glover's remedy at law is not adequate to compensate him for such harm and damage.

92.    Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design acted and continue to act intentionally, willfully, and with full knowledge of Plaintiff David Glover's rights in his designs and installation services. This case is exceptional within the meaning of 15 U.S.C. § 1117(a).

## FIFTH CAUSE OF ACTION
### (Tortious Interference with a Contract)
### Design Gaps, Inc. v. Nicholas Peters, Peters Custom Homes, Inc., Miriam Peters, and Peters Custom Design, LLC

93.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

94.     Plaintiffs had a reasonable expectation that they would maintain the existing Agreement with Defendant Hall and derive revenue from a relationship with Defendant Hall who signed said Agreement and communicated her interest in establishing business for the Plaintiffs.

95.     The relationship that developed between Plaintiffs and Defendant Hall is evidenced by a written agreement between the parties, and the Agreement that existed between the parties to develop business for the Plaintiffs correspondingly provide valuable consideration in exchange for such services.

96.     Upon information and belief, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design knew of this business relationship and prospective business opportunities that Plaintiffs could have received, and Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design intentionally, unjustifiably, and with improper purpose interfered with Plaintiffs' contractual and business relationship with Defendant Hall.

97.     As further discussed herein, the interference, at least in part, caused Defendant Hall to breach and/or terminate the Agreement, prospective additional design, purchase, and installation services, other business relationships, and/or expectancies with Plaintiffs.

98.     Such breaches of the Agreement were procured, at least in part, by Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design without privilege and with full knowledge of Plaintiffs' exclusive rights to the services being

25

offered by Defendant Hall with respect to Plaintiffs' Proprietary Information in which she had access to.

99.     As a direct and proximate result of Defendant Nicholas Peters', Peters Custom Homes', Defendant Miriam Peters', and Peters Custom Design's interferences, Plaintiffs have been injured, will continue to be injured, and will be directly deprived of any future revenues deriving from the opportunity, which instead accrued and continues to accrue to Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and Peters Custom Design.

### SIXTH CAUSE OF ACTION
**(Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1 et seq.)**
**Design Gaps, Inc. v. Defendants**

100.     Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

101.     Defendants' actions were in and/or affect commerce and had the tendency or capacity to deceive.

102.     Defendants' actions constitute unfair and deceptive trade practices as defined in N.C. Gen. Stat. §75-1.1 *et seq*.

103.     As a consequence of Defendants' wrongful actions, Design Gaps has suffered and/or will continue to suffer irreparable harm and loss, has suffered and will continue to suffer financial and economic loss, and is entitled to have those losses trebled and to recover its attorneys' fees.

26

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### Design Gaps v. Jocelyn Hall

104.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

105.    In her role as the Business Development Manager, Defendant Hall held a position that was unique and influential to Design Gaps' operations, and as such she owed Design Gaps a duty of trust and confidence not to breach her noncompetition obligations and not to disclose or take any confidential and Plaintiffs' Proprietary Information.

106.    Defendant Hall has violated her common law duty arising from her relationship and respective agreement in that while employed with Design Gaps she engaged in acts the directly benefited herself and not Design Gaps and she secretly planned to leave the employ of Design Gaps and schemed to use, disclose or disseminate to Design Gaps' competitors Peters Custom Homes and Peters Custom Design confidential information and Plaintiffs' Proprietary Information.

107.    As a consequence of the breaches described above, Design Gaps has suffered and/or will continue to suffer irreparable harm and loss, and has suffered and will continue to suffer financial and economic loss.

## EIGHTH CAUSE OF ACTION
### (Conversion)
### Plaintiffs v. Jocelyn Hall

108.    Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

109.    Defendant Halls' wrongful retention of and refusal to provide Plaintiffs' with equitable distributions from work she performed while in the employment of Plaintiffs constitutes

27

dominion and control of such distributions by Defendant Hall and is a substantial interference with Plaintiffs' possessory rights in the same.

110. Upon information and belief, Defendant Hall did wrongfully detain and convert money rightfully belonging to Plaintiffs' into her own personal use, thereby preventing Plaintiffs from asserting their rights of ownership and possession over the same.

111. Plaintiffs' demanded that Defendant Hall provide the information needed to ascertain the distributions Plaintiffs were rightfully owed from such operations on behalf of Design Gaps, but Defendant Hall refused to do so.

112. Upon information and belief, Defendant Hall improperly converted money belonging to Plaintiffs without Plaintiffs' consent.

113. As a direct and proximate result of Defendant Hall's conversion, Plaintiffs have been damaged in an amount to be determined through discovery and at trial.

114. Defendant Hall's conversion was wanton and conducted with callous disregard for Plaintiffs' rights. Therefore, Plaintiffs are entitled to recover punitive damages from Defendant Hall pursuant to N.C. Gen. Stat. §§ lD-1, *et seq.* in an amount to be determined at trial to deter such conduct in the future by Defendant Hall and from others similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in its favor on each and every claim for relief set forth herein and award Plaintiffs relief for the following:

a) Defendants pay to Plaintiffs all damages Plaintiffs have suffered by reason of Defendants' acts complained of herein;

b) Defendants pay to Plaintiffs exemplary and treble damages as allowed by the statutes and laws referenced herein;

28

c)      Defendants pay to Plaintiffs profits obtained by Defendants associated with Defendants' acts described herein;

d)      Defendants pay to Plaintiffs pre-judgment interest on any damages awarded to Plaintiffs;

e)      Defendants be ordered and required to pay punitive damages for their acts described herein;

f)      Defendants be ordered and required to pay all costs associated with this action including the attorney's fees and expenses incurred by Plaintiffs;

g)      An Order that prevents any Defendants' designs that have directly been copied from and/or are substantially similar to Plaintiffs' visual designs from being copied;

h)      Defendants be permanently enjoined from advertising, marketing, offering for sale or selling any homes that use Plaintiffs' visual designs and any other design substantially similar to Plaintiffs' visual designs;

i)      Defendants be permanently enjoined from further marketing and selling home products that encompass Plaintiffs' visual designs or designs that are substantially similar to Plaintiffs' visual designs;

j)      The Defendants be permanently enjoined from using Plaintiffs' visual designs and any design substantially similar to Plaintiffs' visual designs; and

k)      Plaintiffs be awarded such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable in this lawsuit.

This 29th day of March, 2023,

Case 3:23-cv-00186   Document 1   Filed 03/29/23   Page 29 of 30

Respectfully Submitted,

Design Gaps, Inc., David Glover and Eva
Glover
By counsel

By: _s/Todd M. Hess_____
    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    5922 Weddington Rd, Ste A5-195
    Wesley Chapel, NC 28104
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Plaintiffs*