| | | |
|---|---|---|
| DESIGN GAPS, INC., et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| JOCELYN HALL, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on two motions to dismiss. The first was filed by

Defendants Peters Custom Homes, Inc., Nicholas Peters, Peters Custom Design, LLC d/b/a

Emerald & Oak Design Studio, and Miriam Peters (collectively "Peters" or the "Peters

Defendants"). (Doc. No. 29). The second was filed by Defendants Jocelyn Hall, and Hall

Interiors, LLC. (Doc. No. 31).

Plaintiffs responded in opposition. (Doc. No. 36, 38). Defendants replied to Plaintiffs'

responses. (Doc. No. 37, 39). For the following reasons, both Defendants' Motions are

**GRANTED**.

##     I.      BACKGROUND

###         a.   Summary of the Case

Design Gaps produces custom cabinetry for high-end homes in the Charlotte, North

Carolina area. Plaintiffs are officers of Design Gaps. Defendant Jocelyn Hall is a former

employee of Design Gaps. Defendant Hall Interiors, LLC is Hall's design business.

1

Defendant Peters Custom Homes, Inc. is the primary competitor of Plaintiff Design Gaps. Defendant Nicholas Peters is the owner of Peters Custom Homes, Inc. Defendant Peters Custom Design, LLC, does business as Emerald & Oak Design Studios. Defendant Miriam Peters is the owner/manager of Peters Custom Design, LLC.

When Defendant Hall went to work for Design Gaps, she signed a business agreement that contained non-solicitation and non-compete clauses. Hall subsequently resigned her employment and went to work for Emerald & Oak Design Studio. Plaintiffs allege that while Hall was employed by Design Gaps she gained access to Design Gaps' technical drawings. Plaintiffs further allege that Peters subsequently constructed homes with interior designs "substantially similar" to building components depicted in Design Gaps' technical drawings. Based on these and other allegations, Plaintiffs bring numerous claims against Defendants.

### b. Plaintiff's Allegations in the Amended Complaint

Plaintiff Design Gaps alleges that it

> is engaged locally and throughout the Carolinas as a full-service interior space design firm that specializes in high-end residential custom construction and renovations including fine custom cabinetry that is included throughout the home. Design Gaps possesses a collection of copyrights and trade dress in certain works, trade secrets, and other proprietary information that are not lawfully available to the public that are used in the design and construction of such residential projects ("Plaintiffs' Proprietary Information").

(Doc. 22 ¶ 15). Defendant Hall began work as Design Gaps' Business Development Manager on June 19, 2018. (Id. ¶ 17). At that time, the parties entered into an employment agreement known as the Business Development Agreement ("Agreement"). (Id.). The non-solicitation provisions at paragraph 4.1 of the Agreement provide that over the course of the Agreement Period and for two years following termination of the Agreement, Defendant Hall would not "directly or indirectly, through any other person, firm or corporation, solicit, raid, entice, induce or

encourage any Business Dev., sales representative agent or consultant of or for [Design Gaps] or its affiliates to (i) cease … her association with or leave the employ of [Design Gaps] or its affiliates, (ii) solicit customers or suppliers of [Design Gaps] or its affiliates for [Defendant Hall's] or any other person's or entity's benefit or (iii) otherwise act in violation of that person's obligations to [Design Gaps] or its affiliates, and [Defendant Hall] shall not authorize or knowingly approve the taking of such actions by any other person." (Id. ¶ 19).

The noncompetition provisions at paragraph 4.2 of the Agreement provide that over the course of the Agreement Period and for two years following termination of the Agreement, Defendant Hall would not "own, manage, operate, join, control, or participate in the ownership, management, operation, or control of, or be connected in any manner with, any entity" that competes with Design Gaps in the design and selling of residential cabinetry. These limitations extended to any region where Design Gaps designs and sells residential cabinetry, i.e., North Carolina and South Carolina. (Id. ¶ 20).

The Agreement expressly defined Hall's "Scope of Work" as, inter alia, meeting with prospective clients to determine their needs; retrieve the necessary information from all relevant sources to execute designs, drawings, quotations, pricing, contracts, orders, and communications to the necessary parties. (Id. ¶ 21). Plaintiffs allege that the Agreement with Defendant Hall was intended to protect Design Gaps' legitimate business interests while allowing Defendant Hall unfettered access to Design Gaps' prospective clients. (Id.).

Defendant Hall resigned from Design Gaps sometime in mid-May 2021. Immediately thereafter, Hall began working for the Peters Defendants at Emerald & Oak Design Studio. (Id. ¶¶ 22–23). Plaintiffs allege that when Hall resigned, she asked to keep Design Gaps' Surface Book Laptop, along with her secured Dropbox access, to answer client questions regarding

recently closed Design Gaps projects. (Id. ¶ 24). When Plaintiffs discovered that Hall was working at Emerald & Oak Design Studio, Plaintiffs immediately terminated Defendant Hall's Dropbox access. Dropbox activity logs showed that Defendant Hall had maintained substantial access to relevant information until Plaintiffs terminated her access.

Plaintiff David Glover went to the Emerald & Oak Design Studio showroom on June 16, 2021, and asked Hall to return the Design Gaps property in her possession. Defendant Hall later returned the laptop, keyboard, mouse, and power brick to the Design Gaps showroom. She did not return the Tumi briefcase purchased by Design Gaps for Defendant Hall's use.

Plaintiffs also allege that Defendant Hall at least twice received money belonging to Design Gaps in the course of her employment and through her fiduciary relationship with Design Gaps, and then fraudulently or knowingly and willfully misapplied or converted to her own use the money belonging to Design Gaps. (Id. ¶¶ 31, 34).

Plaintiffs further allege that Defendant Hall used Plaintiffs' proprietary information to provide design and construction services to Peters Custom Homes. (Id. ¶ 28). Defendant Miriam Peters, the Owner/Manager of Peters Custom Design, was aware of the Agreement, but apparently relied on an attorney's advice that a court would find the Agreement unenforceable. (Id. ¶ 39).

Plaintiffs additionally allege that their Proprietary Information continues to be used for sales, design, and construction purposes by Peters Custom Homes and Peters Custom Design. (Id. ¶ 41). Plaintiffs have in the past conducted projects for Peters Custom Homes including the design and construction of residential cabinetry in homes referred to as "Quail Hollow North" and "Lake Wylie." (Id. ¶¶ 44–52). Plaintiffs allege that Defendants Nicholas Peters and Miriam Peters, through their businesses Peters Custom Homes and Peters Custom Design, promoted the

4

kitchen and other areas of the Quail Hollow and North Lake Wylie residences designed and constructed by Plaintiffs as their own designs and trade dress. (Id. ¶¶ 47, 51; Doc. No. 22-3, Ex. C; Doc. 22-5, Ex. E).

Plaintiffs also allege that the Peters Defendants continue to use in commerce words, terms, names, and designs, individually and in combination, that are likely to cause confusion as to Defendants' affiliations with Plaintiffs' Designs and Trade Dress. Plaintiffs allege that the Peters Defendants have sought to benefit themselves and their home building and home renovation businesses to capitalize on the goodwill associated with Plaintiff Glover; to mislead past, current, and future customers with respect to the origin of such designs; and to divert present and future customers from doing business with Plaintiffs in favor of the Peters Defendants. (Doc. 22 ¶¶ 53–58).

Based on the foregoing allegations, Design Gaps asserts the following claims against the Peters Defendants: Misappropriation of Trade Secrets under North Carolina Trade Secrets Protection Act, N.C. GEN. STAT. § 66-152 et seq. (Second Claim); Misappropriation of Trade Secrets Under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. (Fourth Claim); False Advertising under the federal Lanham Act, 15 U.S.C. § 1125 et seq. (Fifth Claim); False Designation of Origin under the Lanham Act (Sixth Claim); Tortious Interference with Contract (Seventh Claim); and Unfair and Deceptive Trade Practices ("UDTPA") under N.C. GEN. STAT. § 75-1.1 et seq. (Eighth Claim).

Plaintiffs bring the following claims against the Hall Defendants: Breach of Business Development Agreement (First Claim); Misappropriation of Trade Secrets under North Carolina Trade Secrets Protection Act (Second Claim); Unfair and Deceptive Trade Practices ("UDTPA") (Eighth Claim); Misappropriation of Trade Secrets Under Defend Trade Secrets Acts (Third

Claim); Breach of Fiduciary Duty (Ninth Claim); Fraud (Tenth Claim); Embezzlement (Eleventh Claim); and Constructive Fraud (Twelfth Claim).

The Peters Defendants argue in their motion to dismiss that Plaintiffs' Lanham Act and UDTPA claims are preempted by the Copyright Act. The Peters Defendants further argue that Plaintiffs have failed to plausibly allege: (1) misappropriation of trade secrets under North Carolina law and federal law; (2) tortious interference with contract; and (3) violations of North Carolina's UDTPA. The Hall Defendants argue in their own motion to dismiss that Plaintiffs have failed to plausibly allege: (1) the elements of claims for misappropriation of trade secrets under North Carolina law and federal law, and (2) a claim for relief as to the remaining state law claims.

## II.     STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to

dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." <u>Id.</u> at 679 (citations omitted).

### III.    DISCUSSION

### A.  Defendants' Preemption Arguments

Plaintiffs bring claims against the Peters Defendants for violations of the federal Lanham Act—specifically, claims for false designation of origin and false advertising. Section 43 of the Lanham Act, 15 U.S.C. § 1051 et seq. provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). In support of the Lanham Act claims, Plaintiffs allege that the Peters Defendants used, reproduced, displayed, marketed, offered for sale, advertised, and sold Plaintiffs' Designs and Trade Dress in certain homes referred to as "Quail Hollow North" and "Lake Wylie," and marketed Plaintiffs' unique designs as Defendants' own. Plaintiffs claim that "[t]he cabinetry in the Quail Hollow North residence and the Lake Wylie residence designed and constructed by Plaintiffs focuses upon artistic and material excellence that is consistent with the type of cabinetry that Plaintiffs provide for higher-end residences and possess non-functional,

7

aesthetic qualities that are protectable as Plaintiffs' trade dress." (Doc. 22 ¶ 117).[1]

The Copyright Act provides the exclusive remedy for "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). Courts have established a two-prong test to determine whether a claim is preempted by the Copyright Act. According to that test, a claim is preempted if (1) the work is within the "subject matter of copyright" and (2) the claim seeks to vindicate rights equivalent to those protected by copyright law. Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 (4th Cir. 1993). Notably, "[t]he scope of copyright preemption is broader than the scope of copyright protection." Brantley v. Epic Games, Inc., 463 F. Supp. 3d 616, 621 (D. Md. 2020) (emphasis added) (citing U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997) (rejecting argument that a claim is not preempted because it falls within "ideas and methods" excluded from copyright protection because "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection")); Alliance for Telecomms. Indus. Solutions, Inc. v. Hall, No. CCB-05-440, 2007 WL 3224589, at *10 (D. Md. Sept. 27, 2007) ("The inquiry is limited to whether a work comes under the scope of the Act, and not whether it is actually protected[.]"). Thus, a claim may be preempted by the Copyright Act even if the subject matter of the work could not be registered by the Copyright Office. Id. Finally, the "Supreme Court has

---

[1] "The trade dress of a product consists of its 'total image and overall appearance,' including its 'size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 368 (4th Cir. 1999) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n.1 (1992)). To prove a claim for trade dress infringement under the Lanham Act, a plaintiff must show that "(1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning." Lance Mfg., LLC v. Voortman Cookies Ltd., 617 F. Supp. 2d 424, 432 (W.D.N.C. 2009) (quoting Ashley Furniture, 187 F.3d at 368).

8

extended th[e] principle of copyright preemption to the Lanham Act and federal trademark protection" where the claimed rights are equivalent to the exclusive rights within the Copyright Act. <u>Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.</u>, 170 F. Supp. 3d 1249, 1264 (C.D. Cal. 2016) (citing <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 33–38 (2003)).

Defendants satisfy the first prong of the preemption analysis. As a threshold matter, Plaintiffs' Amended Complaint repeatedly refers to Design Gaps' "copyrights." <u>E.g.</u>, (Doc. 22 ¶ 15) ("Design Gaps possesses a collection of <u>copyrights</u> in certain works") (emphasis added); (<u>Id</u>. ¶ 17) ("In an effort to protect its collection of works subject to <u>copyright</u> protection[.]") (emphasis added); (<u>Id</u>. ¶ 113) ("During the pendency of this action and permanently thereafter, Defendant Nicholas Peters, Peters Custom Homes, Defendant Miriam Peters, and/or Peters Custom Design should be enjoined and restrained from directly or indirectly using any of Plaintiffs' Design in any manner that is prohibited by the <u>copyright law</u> of the United States[.]") (emphasis added).

Moreover, Design Gaps uses terms synonymous with "copying" throughout the Amended Complaint. Design Gaps alleges that the Peters Defendants "used, <u>reproduced</u>, displayed, marketed, offered for sale, advertised and sold Plaintiffs' Designs and Trade Dress...." (Doc. 22 ¶ 104) (emphasis added). Design Gaps further alleges that kitchens built by the Peters Defendants "were the <u>same as or substantially similar</u> to Plaintiff David Glover's designs and trade dress." (<u>Id</u>. ¶ 118) (emphasis added). Similar allegations are repeated throughout the Amended Complaint.

The Court takes judicial notice that Design Gaps explicitly asserted copyright registrations in a recently filed federal action. <u>See Design Gaps, Inc. et al. v. Distinctive Design & Constr. LLC</u>, Case No. 2:23-cv-197-RMG (D.S.C. 2023) (asserting infringement of copyright

registration number VAu 1-462-768 for a work titled "Highsmith Main House Cabinet Drawings and 1 Other Unpublished Works") (hereinafter "Design Gaps' South Carolina Copyright Action").[2] In Design Gaps' South Carolina Copyright Action, Design Gaps asserts claims for infringement of copyright registration number VAu 1-462-768, which pertains to "technical drawings ... title[d] 'Main House Cabinet Drawings' and 'Master Bath Closet Drawings.'" (Peters Def. Ex. 1 ¶ 52 (citing Exhibits D, E, and F to the Design Gaps' South Carolina Action)). Apparently, even Plaintiff agrees that Design Gaps' purported technical drawings "'fit[] within one of the general subject matter categories of sections 102 and 103'" of the Copyright Act. Fin. Info., Inc. v. Moody's Investors Serv., Inc., 808 F.2d 204, 209 (2d Cir. 1986) (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess., 131).

Like Design Gaps' South Carolina Copyright Action, this case involves technical drawings that fully represent the design of cabinets and the positioning of cabinets and other fixtures in a home:

> Such designs include the construction specifications, appliances, lighting, plumbing, electrical, installation, and all components associated with the design and placement of cabinetry and closets in the home, and, in particular, the arrangement of such components to lead to the finished cabinetry and closet systems in the home. Such components are fully represented in the technical drawings provided by Plaintiffs....

(Doc. 22 ¶ 42). This same paragraph appears in Design Gaps' South Carolina Copyright pleadings. (Peters Defs. Ex. 1 ¶ 61). Further, the technical drawings at issue in Design Gaps'

---

[2] In adjudicating motions to dismiss, courts may examine "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also FED. R. EVID. 201(d). Such matters subject to judicial notice include filings in other federal actions. Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) (noting the judicial notice exception for evaluating Rule 12 motions), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015); Pender v. Bank of Am. Corp., 756 F. Supp. 2d 694, 701 n.3 (W.D.N.C. 2010) (taking judicial notice of filings in a federal case in the Seventh Circuit), aff'd sub nom. McCorkle v. Bank of Am. Corp., 688 F.3d 164 (4th Cir. 2012).

South Carolina Copyright Action are remarkably similar to the technical drawings at issue in this case. (Compare (Doc. No. 22-2 at 3–18) with Peters Defs. Ex. 2 and Ex. 3). This Court agrees with Defendants that the technical drawings and ideas identified in the Amended Complaint fit within the general subject matter exclusively earmarked by Congress for copyright protection. This is true regardless of whether the designs involved in this action are ultimately registerable by the copyright office. The Court finds that the first prong of the preemption analysis is established.

Under the second prong of the Copyright Act preemption analysis, the Court must determine whether the complaint seeks to vindicate rights that "are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." Rosciszewski, 1 F.3d at 229 (quoting Ehat v. Tanner, 780 F.2d 876, 878 (10th Cir. 1985), cert. denied, 479 U.S. 820 (1986)). The Copyright Act sets out several "exclusive rights" available to copyright holders, including the rights to: (1) reproduce the copyrighted work; (2) prepare derivative works based on the copyrighted work; (3) distribute copies of the copyrighted work; (4) perform the copyrighted work; (5) display the copyrighted work; and (6) perform the copyrighted work via digital audio transmission. 17 U.S.C. § 106. The Court ultimately finds that Design Gaps attempts to assert claims equivalent to one or more of these rights vested exclusively in copyright.

Plaintiffs' Lanham Act claim may not be preempted if Design Gaps' claims include an "extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." Rosciszewski, 1 F.3d at 229–30 (internal quotation marks omitted) (second prong satisfied and the claim preempted because the "core of [the] cause[] of action" is "unauthorized copying"). Here, Plaintiffs fail to include an extra element rendering

their Lanham Act claim qualitatively different from a copyright claim. Instead, Design Gaps

explicitly describes the allegedly infringing acts as the quintessential act of copyright

infringement. The Amended Complaint alleges that the kitchens constructed by Peters "have

directly been <u>copied from</u> and/or bear substantial similarity to Plaintiffs' designs...." (<u>Id</u>. ¶ 105

(emphasis added)); <u>id</u>. ¶ 106 (same allegation of substantially similar copying). Design Gaps

further alleges that the Peters Defendants have

> repeatedly and willfully misrepresented and continue to misrepresent the true
> origin and source of cabinet and closet designs created and revised by Plaintiff
> Glover, and falsely claiming to be the designers of these associated designs that
> were, in fact, created by Plaintiff Glover. Such designs include the construction
> specifications, appliances, lighting, plumbing, electrical, installation, and all
> components associated with the design and placement of cabinetry and closets in
> the home, and, in particular, the arrangement of such components to lead to the
> finished cabinetry and the trade dress in the home. The design components are
> fully represented in the technical drawings provided by Plaintiffs in association
> with, for example, projects performed for Peters Custom Homes.

(<u>Id</u>. ¶ 42).

Plaintiffs' Lanham Act claims are similar to those the Supreme Court deemed preempted

in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 33–38 (2003). In <u>Dastar</u>, a

World War II film produced by Fox lapsed into the public domain, falling outside of the

'protection' of the Copyright Act, but remaining within the Act's "general scope." <u>Dastar</u>, 539

U.S. at 26. Subsequently, a second film company (Dastar) purchased a physical copy of the

uncopyrighted film, prepared "arguably minor" modifications to the video, and sold copies of the

video. <u>Id</u>. at 26, 31. Dastar's advertising of its video did not mention Fox or Fox's

affiliates/successors. Instead, Dastar's advertising only mentioned Dastar and Dastar's affiliates.

<u>Id</u>. at 27. Fox sued Dastar under the Lanham Act, alleging that Dastar's advertising amounted to

false designation of origin and reverse passing off. <u>Id</u>. The district court found for Fox, and the

Ninth Circuit affirmed.

A unanimous Supreme Court reversed the Ninth Circuit and held that "[t]he Lanham Act

... does not exist to reward manufacturers for their innovation in creating a particular device...."

Id. at 34 (quoting TrafFix, 532 U.S. at 29). Indeed, "[w]hen Congress has wished to create such

an addition to the law of copyright, it has done so with much more specificity than the Lanham

Act's ambiguous use of 'origin.'" Id. (citing the The Visual Artists Rights Act of 1990, § 603(a),

104 Stat. 5128, which "provides [an] express right of attribution [that] is carefully limited and

focused"). The Supreme Court further explained:

> Reading "origin" in § 43(a) to require attribution of uncopyrighted materials
> would pose serious practical problems. Without a copyrighted work as the
> basepoint, the word "origin" has no discernable limits. A video of the MGM film
> Carmen Jones, after its copyright has expired, would presumably require
> attribution not just to MGM, but to Oscar Hammerstein II (who wrote the musical
> on which the film was based), to Georges Bizet (who wrote the opera on which
> the musical was based), and to Prosper Merimee (who wrote the novel on which
> the opera was based). In many cases, figuring out who is in the line of "origin"
> would be no simple task.

Id. at 35. Under Dastar, courts routinely dismiss Lanham Act claims where the "claim is more

accurately conceived of as attacking unauthorized copying[.]" Slep-Tone Entm't Corp. v. Wired

for Sound Karaoke & DJ Servs., LLC, 845 F.3d 1246, 1250 (9th Cir. 2017) (affirming dismissal

of Lanham Act claim); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir.

2008) (same); Mays & Assocs., Inc. v. Euler, 370 F. Supp. 2d 365, 370–71 (D. Md. 2005)

(Lanham Act unfair competition claim preempted when based on the use of works "without []

authorization," despite allegations that such use would cause confusion "as to the origin,

sponsorship, or approval" of defendants' services).

Here, as in Dastar, Design Gaps' Lanham Claim is based on its theory that Defendants

failed to attribute Plaintiffs as the "origin" of goods Defendants allegedly copied. Design Gaps

does not allege that the kitchens and cabinets cited in the Amended Complaint were actually sold

13

in commerce by anyone other than the Peters Defendants. Consistent with the Supreme Court's holding in Dastar, Design Gaps' Lanham Act claims must be dismissed as preempted by the Copyright Act.

The Eastern District of North Carolina reached this same conclusion in a case with strikingly similar facts. In Logan Developers, "[defendant] obtained [plaintiff]'s copyrighted home design, incorporated the ideas/concepts of the design into separate physical designs (the Southport and the Cambridge), and then sold the new design to the [homeowners]." Logan Developers, Inc. v. Heritage Buildings, Inc., No. 7:12cv323, 2013 WL 5460757, at *5 (E.D.N.C. Sept. 30, 2013). The court concluded that "under Dastar, that conduct is not cognizable as a § 43(a) Lanham Act claim." Id. at **4, 5 (finding that "[b]ecause [the plaintiff] is not the 'origin of goods' for purposes of § 43(a) under the facts alleged in the complaint, [the plaintiff's] Lanham Act claims fail to state claims upon which relief can be granted"). Just as in Logan Developers and Dastar, Design Gaps' false advertising and false designation of origin Lanham Act claims are preempted by the Copyright Act. Brantley, 463 F. Supp. 3d at 626 (granting motion to dismiss Lanham Act false designation of origin claim on preemption grounds).

The Court also finds that, to the extent that Plaintiffs' North Carolina UDTPA claim is based on false advertising or false designation of origin, Plaintiffs' North Carolina UDTPA claim is preempted for the same reasons as Plaintiffs' Lanham Act claims. This Court has repeatedly held that such UDTPA claims are preempted by the Copyright Act. Further, allegations of "awareness, intent, or commercial immorality are not qualitatively different so as to prevent preemption by the Copyright Act." Baronius Press, Ltd. v. St. Benedict Press, LLC, No. 3:16-cv-695, 2017 WL 3412145, at *3 (W.D.N.C. Aug. 9, 2017) (citing Rosciszewski, 1 F. 3d at 230; Old S. Home Co. v. Keystone Realty Group, Inc., 233 F. Supp. 2d 734, 737 (M.D.N.C. 2002)).

## B. Defendants' Argument that Plaintiffs Fail to State a Claim under the Defend Trade Secrets Act

The DTSA defines a "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).[3] See also Power Home Solar, LLC v. Sigora Solar, LLC, No. 3:20-cv-42, 2021 WL 3856459, at *9 (W.D. Va. Aug. 30, 2021). To state a claim under the DTSA, a plaintiff must allege: "(1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce." TECH USA, Inc. v. Milligan, No. RDB-20-0310, 2021 WL 795151, at *4 (D. Md. Mar. 1, 2021) (quoting Philips N.A. LLC v. Hayes, ELH-20-1409, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020)).

"To adequately plead trade secret misappropriation under the DTSA, a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating...." Lithero, LLC v. AstraZeneca Pharm. LP, CV 19-2320-RGA, 2020 WL 4699041, at *1 (D. Del. Aug. 13, 2020) (internal quotation marks omitted); see also Washburn v. Yadkin Valley Bank & Trust Co., 190 N.C. App. 315 (N.C. Ct. App. 2008);

---

[3] Due to the similar standards of the North Carolina Trade Secrets Protection Act and DTSA, courts confronted with both claims regularly analyze them simultaneously.

15

Keystone Transp. Solutions, LLC v. N.W. Hardwoods, Inc., 5:18-cv-039, 2019 WL 1756293, at

*4 (W.D. Va. Apr. 19, 2019) (holding that a plaintiff "must identify, with particularity, each

trade secret it claims was misappropriated" in order to "allow the finder of fact to distinguish that

which is legitimately a trade secret from other information that is simply confidential but not a

trade secret, or is publicly available information"). Thus, when asserting a claim under the

DTSA, a plaintiff may not simply list categories of alleged trade secrets in broad terms without

identifying a "specific set of 'methods, techniques, processes, procedures, programs, or codes'

that could establish ... a trade secret." Calendar Research LLC v. StubHub, Inc., 2:17-cv-4062-

SVW-SS, 2020 WL 4390391, at *6 (C.D. Cal. May 13, 2020) (quoting 18 U.S.C. § 1839(3)).

Courts routinely dismiss misappropriation of trade secret claims based on vague and

conclusory allegations at the pleadings stage. In Krawiec v. Manly, the North Carolina Supreme

Court affirmed the dismissal of a plaintiffs' claim for misappropriation of trade secrets, in part,

because the plaintiffs failed to make factual allegations that sufficiently describe the alleged

trade secrets. 811 S.E.2d 542, 549 (N.C. 2018). The "plaintiffs described their trade secrets only

as their 'original ideas and concepts for dance productions, marketing strategies and tactics, as

well as student, client and customer lists and their contact information.'" Id. The court found that

the plaintiffs' description was insufficient because it did not provide any additional "detail about

these ideas, concepts, strategies, and tactics sufficient to put defendants on notice as to the

precise information allegedly misappropriated." Id.

Plaintiffs' Amended Complaint similarly fails to define trade secrets in sufficient detail to

put Defendants on notice as to the precise information at issue. The Amended Complaint defines

Plaintiffs' Proprietary Information as "a collection of copyrights in certain works, trade secrets,

and other proprietary information that are not lawfully available to the public that are used in the

16

design and construction of such residential projects." (Doc. 22 ¶ 15). The Amended Complaint

goes on to define the trade secrets as including:

> business and technical information, including but not limited to formulas, patterns,
> programs, devices, compilations of information, methods, techniques, and processes
> from which Plaintiffs derive actual or potential commercial value from not being
> generally known or readily ascertainable through independent development or reverse
> engineering by persons who can otherwise obtain economic value from its disclosure
> or use.

(Doc. 22 ¶ 16). This definition of trade secrets is nothing more than a recitation of the statutory

definition of trade secrets. See 18 U.S.C. § 1839(3); N.C. GEN. STAT. § 66-152(3). Plaintiffs do,

however, provide a second definition of trade secrets for their DTSA claims. Plaintiffs allege that

the trade secrets protected under the DTSA and appropriated by the Peters Defendants include

"confidential and valuable technical knowledge, engineering specifications, market knowledge,

and intellectual and practical knowhow relating to, developed for, and necessary for the design

and construction of cabinetry, such cabinetry used, in particular, in higher-end residences."[4]

(Doc. 22 ¶ 92). This definition is no more specific than the generalized definition rejected in

Krawiec. While a plaintiff is not expected to reveal critical details regarding the alleged trade

secret, they must do more than provide a generic allegation. Krawiec, 811 S.E.2d at 549 ("There

exists a wide gulf between plaintiffs' description of its alleged trade secrets as 'original ideas and

concepts for dance productions' and 'marketing strategies and tactics,' and exposure or

compromise of the critical details of those alleged trade secrets."); accord Washburn v. Yadkin

Valley Bank & Tr. Co., 660 S.E.2d 577, 585 (2008) (holding that defendant failed to identify the

trade secrets with sufficient specificity when it described the trade secrets as "acquired

knowledge of [Defendant's] business methods; clients, their specific requirements and needs;

---

[4] Design Gaps uses the same language to describe its alleged trade secrets as it uses to describe
its alleged trade dress.

and other confidential information pertaining to [Defendant's] business"); Power Home Solar, LLC, No. 20cvs7165, 2021 WL 2530984, at *13 (N.C. Super. Ct. June 18, 2021) (dismissing Plaintiff's claims for violations of NCTSPA and DTSA based on Plaintiff's insufficient description of its trade secrets as "proprietary practices, methods, techniques, pricing models," and "information concerning [Plaintiff's] suppliers and vendors"); Bite Busters, LLC v. Burris, 2021 NCBC 19 ¶ 39 (N.C. Super. Ct. Mar. 25, 2021) (finding no trade secrets in "processes, procedures," and "other trade secrets"); Window Gang Ventures, Corp. v. Salinas, 2019 NCBC 23 ¶ 77 (N.C. Super. Ct. Apr. 2, 2019) (finding no trade secrets in "[i]nformation regarding [Plaintiff's] proprietary equipment and chemical cleaning solutions"); AECOM Tech. Corp. v. Keating, 2012 NCBC 10 ¶ 21 (N.C. Super. Ct. Feb. 6, 2012) (finding no trade secrets in "customer lists, customer contract information, pricing information, and product information").

Design Gaps elsewhere asserts that its

product sources, products, price lists, advertising plans, designs and materials, technical drawings, services, pricing points, methods of sales and business contracts and training methods as well as its customers' pricing programs, unit sales, dollar volume, models, financial information, product roadmaps, channelization and sales strategies are trade secrets subject to the North Carolina Trade Secrets Protection Act.

(Id. ¶ 68). The alleged trade secrets here primarily refer to knowledge Hall would have gained while working for Plaintiffs. While Plaintiffs allege that Hall was using the training and mentorship provided by Plaintiffs during her employment in violation of the Agreement, that knowledge is not subject to a misappropriation of trade secrets claim. Eng'g Assocs., Inc. v. Pankow, 150 S.E.2d 56, 58 (N.C. 1966) ("[W]here a person in his new employment undertakes to use the knowledge acquired in the old, it is not unlawful, for equity has no power to compel a man who changes employers to wipe clean the slate of his memory."). Put another way, "[u]nder North Carolina law, customer information maintained in the memory of a departing employee is

18

not a trade secret." Asheboro Paper & Packaging, Inc. v. Dickinson, 599 F. Supp. 2d 664, 677 (M.D.N.C. 2009) (citing Quantum Health Res. v. Hemophilia Res. of Am., Inc., No. 2:95CV00230, 1995 U.S. Dist. LEXIS 16726, at *31 (M.D.N.C. Sept. 18, 1995). Plaintiffs' DTSA are factually insufficient.

Even if Plaintiffs described the alleged trade secrets with sufficient specificity, the confidentiality of those alleged trade secrets has not been protected. In the Amended Complaint, Plaintiffs allege that "Plaintiffs' Proprietary Information has been and is being used for selling, design, and construction purposes" by the Peters Defendants. (Doc. 22 ¶ 41). Plaintiffs defined Proprietary Information to include their trade secrets, which includes designs Plaintiffs allegedly developed. (Doc. 22, ¶¶ 15–16). However, Plaintiffs attached to the Amended Complaint Exhibits B and D (Docs. 22-2 and 22-4), which they identify as the contract and plans for designs that were alleged created by Plaintiffs and used by the Peters Defendants. (Doc. 22 ¶ 44, Doc. 22-2, Doc. 22-4). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."[5] Glaxo Inc. v. Novopharm Ltd., 931 F. Supp. 1280, 1301 (E.D.N.C. 1996) (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984)).

Moreover, to the extent that Plaintiffs contend that their unique cabinetry design (trade dress) constitutes a trade secret, Plaintiffs do not allege how they maintain the secrecy of this alleged trade secret, particularly when they install the cabinets in the homes of their customers where customers and visitors may view the cabinets.[6] In other words, as the cabinets were

---

[5] Defendants contend that the contracts, plans, and drawings reference that the cabinets, supplied by Plaintiffs, are designed and manufactured by Downsview Kitchens Cabinetry, not Plaintiffs. See (Doc. 22-2, p. 3).

[6] The crux of Plaintiffs' theory of "misappropriation" rests on Plaintiffs' allegations that Hall took the unique designs for Plaintiffs' custom cabinetry and shared them with Defendants so that

installed in residential homes which Plaintiffs had no control over, any design feature could be readily inspected, reviewed, and reversed engineered outside Plaintiffs' control.

Plaintiffs' claim for misappropriation of trade secrets under the DTSA will be dismissed.

## C.  Plaintiffs' Remaining State Law Claims

This Court's jurisdiction is predicated on the federal questions presented by Plaintiffs' Lanham Act and DTSA claims. See 28 U.S.C. ¶ 1331. Plaintiffs do not (and cannot) allege diversity jurisdiction.[7] This Court is dismissing the Lanham Act and DTSA claims. Thus, Plaintiffs' remaining state law claims against the Peters Defendants (North Carolina misappropriation of trade secrets, tortious interference with contract, and unfair and deceptive trade practices to the extent not preempted) and the remaining state law claims against the Hall defendants (North Carolina misappropriation of trade secrets, breach of contract, unfair and deceptive trade practices, breach of fiduciary duty, embezzlement, and constructive fraud) have no independent basis for federal subject matter jurisdiction. This Court, in its discretion, declines to exercise supplemental jurisdiction over these remaining state law claims.[8] See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343 (1988); Hinson v. Norwest Fin. South Carolina, Inc., 239 F.3d 611, 617 (4th Cir. 2001) ("[W]e conclude, that under the authority of 28 U.S.C. §

---

Defendants could simply copy the designs and advertise them as their own.

[7] The Amended Complaint alleges that all parties reside in North Carolina. (Doc. 22 ¶¶ 1–9).

[8] The Court notes that the parties hotly contest North Carolina law as to the state law claims. For example, Defendants argue that, under North Carolina law, the non-compete clause at issue in this case is unenforceable. North Carolina state courts are uniquely qualified to determine this issue. North Carolina state law claims (breach of contract, constructive fraud, unfair and deceptive trade practices, embezzlement, breach of fiduciary duty) clearly predominate in this action.

1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met."); <u>Hall v. Prince George's Cnty.</u>, 189 F. Supp. 2d 320, 324 (D. Md. 2002) (dismissing remaining state law claims without prejudice as a result of the dismissal of the federal claims). Plaintiffs' state law claims against Defendants are therefore **DISMISSED** without prejudice.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motions to Dismiss are **GRANTED** as to Plaintiff's federal law claims. Moreover, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. These latter claims are dismissed without prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motions to Dismiss the Amended Complaint, (Doc. Nos. 29, 31), are **GRANTED**. The state law claims are **DISMISSED WITHOUT PREJUDICE**.

Signed: November 20, 2023

Max O. Cogburn Jr.
United States District Judge

21